**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 2 2020

| | |
|---|---|
| **SANFORD WADE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **JONESBORO CARWASH, LLC** | ) |
| **d/b/a TEAM CLEAN CARWASH,** | ) |
| **and BOING US HOLDCO, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

**CIVIL ACTION NO.:** H:20-CV-1329-BSM

**JURY DEMAND**

This case assigned to District Judge _Miller_
and to Magistrate Judge _Volpe_

## COMPLAINT

## JURISDICTION

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 1343(a)(4). This is a suit authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., 42 U.S.C. § 1981, and Plaintiff's pendant state law claims. Plaintiff invokes the jurisdiction of this Court to secure protection for and to redress the deprivation of rights secured by Title VII and Section 1981, seeking injunctive and other relief against race discrimination, racial harassment, retaliation in employment, and violations of the Arkansas Civil Rights Act of 1993.

## PARTIES

2.      Plaintiff Sanford Wade ("Wade" or "Plaintiff") is a male citizen of the United States and a resident of Pulaski County, Arkansas.  At all times relevant

1

to this action, Plaintiff was an employee of Defendant within the meaning of Title VII and Section 1981.

3.     Defendant Jonesboro Carwash, LLC d/b/a Team Clean Car Wash ("Team Clean"), is a domestic limited liability company doing business within the state of Arkansas. Defendant Boing US Holdco, Inc. ("Boing") is a foreign corporation doing business within the State of Arkansas. Upon information and belief, Boing acquired Team Clean in July 2020 including their outstanding debts and liabilities. Boing and Team Clean (hereafter collectively referred to as "Defendants") are engaged in an industry affecting commerce and employ at least fifteen (15) employees. Defendants are employers within the meaning of Title VII and the Arkansas Civil Rights Act.

## ADMINISTRATIVE PROCEDURES

4.     Plaintiff hereby adopts and realleges paragraphs 1 through 3 as if fully set forth herein.

5.     On July 30, 2019, within 180 days of the last act of discrimination, Wade filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

6.     Plaintiff's Right to Sue letter states the date mailed by the EEOC being August 4, 2020 (Exhibit A). Neither Plaintiff nor his counsel received a copy of his Right to Sue letter in the mail. On August 11, 2020, counsel for Plaintiff received an

electronic copy of the Right to Sue letter in her Freedom of Information Act (FOIA) request (Exhibit B).

7.      Plaintiff meets all administrative prerequisites for filing suit on his Title VII claim and timely brings this action.

8.      Plaintiff has no administrative prerequisites for any claim under 42 U.S.C. § 1981 and is entitled to bring this action.

## STATEMENT OF FACTUAL ALLEGATIONS

9.      Plaintiff hereby adopts and realleges paragraphs 1 through 8 as if fully set forth herein.

10.      Plaintiff Sanford Wade is an African American male.

11.      Plaintiff began working for Defendants on or about February 19, 2018, as an Attendant.

12.      On or about January 1, 2019, Plaintiff transferred to Defendants' new location in Sherwood, Arkansas. Plaintiff was promoted to the position of Key Holder.

13.      Plaintiff's direct supervisor at Defendants' Sherwood location was Gaetonette Mezza ("Mezza"). Mezza is Caucasian.

14.      On or about April 8, 2019, Defendants hired Heath Powell ("Powell") to be the Site Manager for its Sherwood location. Powell is Caucasian. Powell became Plaintiff's new direct supervisor.

15.     On or about April 8, 2019, Team Clean promoted Mezza to the position of Director of Operations.

16.     Immediately after being hired, Powell began using the term "nigger" when referring to African American employees.

17.     Powell regularly used the term "nigger" when speaking to Mezza in front of African American employees.

18.     Some of the racially offensive comments Powell made include, but are not limited to, stating that he "was going to work them niggers" and that he would promote white employees before he promoted black employees.

19.     Powell's racially offensive comments occurred on a daily basis. Mezza was often present when the comments were made. Mezza did not discipline Powell.

20.     On or about May 1, 2019, Plaintiff complained to Mezza about Powell's use of the term "nigger" and other racially offensive comments.

21.     Mezza threatened to fire Plaintiff if he mentioned the comments to Team Clean's owners.

22.     On May 1, 2019, Mezza gave Plaintiff a disciplinary write-up for alleged "excessive cell phone usage."

23.     Prior to Plaintiff's complaint about Powell, Plaintiff had no disciplinary actions or negative performance reviews.

24.     Powell continued to use the term "nigger" and other racially offensive comments when referring to African American employees.

25.     On May 3, 2019, Plaintiff complained to Mezza again about Powell's racially offensive comments. In response, Mezza gave Plaintiff another disciplinary write-up for an alleged "bad attitude" and transferred Plaintiff back to Defendants' University Avenue location in Little Rock.

26.     As part of the transfer, Defendants demoted Plaintiff from a Key Holder to an Attendant.

27.     On June 6, 2019, Defendants terminated Plaintiff. Team Clean's termination form stated the reason for the termination included Plaintiff's "insubordination", that Plaintiff had "accused me [Mezza] of being racist," and that Plaintiff "attempted to make threats" towards Powell.

## COUNT ONE
## TITLE VII – RACE DISCRIMINATION
## DISPARATE TREATMENT

28.     Plaintiff hereby adopts and realleges the allegations of paragraphs 1 through 27 as if fully set forth herein.

29.     Plaintiff Sanford Wade is an African American male.

30.     Plaintiff began working for Defendants on or about February 19, 2018, as an Attendant.

31.    On or about January 1, 2019, Plaintiff transferred to Defendants' new location in Sherwood, Arkansas. Plaintiff was promoted to the position of Key Holder.

32.    Plaintiff's direct supervisor at Defendants' Sherwood location was Gaetonette Mezza ("Mezza"). Mezza is Caucasian.

33.    On or about April 8, 2019, Defendants hired Heath Powell ("Powell") to be the Site Manager for its Sherwood location. Powell is Caucasian. Powell became Plaintiff's new direct supervisor.

34.    On or about April 8, 2019, Team Clean promoted Mezza to the position of Director of Operations.

35.    Immediately after being hired, Powell began using the term "nigger" when referring to African American employees.

36.    Powell regularly used the term "nigger" when speaking to Mezza in front of African American employees.

37.    Some of the racially offensive comments Powell made include, but are not limited to, stating that he "was going to work them niggers" and that he would promote white employees before he promoted black employees.

38.    Powell's racially offensive comments occurred on a daily basis. Mezza was often present when the comments were made. Mezza did not discipline Powell.

39.     On or about May 1, 2019, Plaintiff complained to Mezza about Powell's use of the term "nigger" and other racially offensive comments.

40.     Mezza threatened to fire Plaintiff if he mentioned the comments to Team Clean's owners.

41.     On May 1, 2019, Mezza gave Plaintiff a disciplinary write-up for alleged "excessive cell phone usage."

42.     Prior to Plaintiff's complaint about Powell, Plaintiff had no disciplinary actions or negative performance reviews.

43.     Powell continued to use the term "nigger" and other racially offensive comments when referring to African American employees.

44.     On May 3, 2019, Plaintiff complained to Mezza again about Powell's racially offensive comments. In response, Mezza gave Plaintiff another disciplinary write-up for an alleged "bad attitude" and transferred Plaintiff back to Defendants' University Avenue location in Little Rock.

45.     As part of the transfer, Defendants demoted Plaintiff from a Key Holder to an Attendant.

46.     On June 6, 2019, Defendants terminated Plaintiff. Team Clean's termination form stated the reason for the termination included Plaintiff's "insubordination", that Plaintiff had "accused me [Mezza] of being racist," and that Plaintiff "attempted to make threats" towards Powell.

47.     Plaintiff's race, African-American, was a motivating factor in Defendants' decision to terminate him.

48.     Defendants' articulated legitimate, non-discriminatory reasons for Plaintiff's termination are not the real reason, but are a pretext to hide race discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.     Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII;

b.     Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII;

c.     Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, back pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.     Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT TWO
## TITLE VII – RACE DISCRIMINATION
## HOSTILE WORK ENVIRONMENT

49.     Plaintiff hereby adopts and realleges the allegations of paragraphs 1 through 48 as if fully set forth herein.

50.     Plaintiff Sanford Wade is an African American male.

51.     Plaintiff began working for Defendants on or about February 19, 2018, as an Attendant.

52.     On or about January 1, 2019, Plaintiff transferred to Defendants' new location in Sherwood, Arkansas. Plaintiff was promoted to the position of Key Holder.

53.     Plaintiff's direct supervisor at Defendants' Sherwood location was Gaetonette Mezza ("Mezza"). Mezza is Caucasian.

54.     On or about April 8, 2019, Defendants hired Heath Powell ("Powell") to be the Site Manager for its Sherwood location. Powell is Caucasian. Powell became Plaintiff's new direct supervisor.

55.     On or about April 8, 2019, Team Clean promoted Mezza to the position of Director of Operations.

56.     Immediately after being hired, Powell began using the term "nigger" when referring to African American employees.

57.     Powell regularly used the term "nigger" when speaking to Mezza in front of African American employees.

58.     Some of the racially offensive comments Powell made include, but are not limited to, stating that he "was going to work them niggers" and that he would promote white employees before he promoted black employees.

59.     Powell's racially offensive comments occurred on a daily basis. Mezza was often present when the comments were made. Mezza did not discipline Powell.

60.     Powell's comments were unwelcome and based on Plaintiff's race, African-American.

61.     On or about May 1, 2019, Plaintiff complained to Mezza about Powell's use of the term "nigger" and other racially offensive comments.

62.     Mezza threatened to fire Plaintiff if he mentioned the comments to Team Clean's owners.

63.     On May 1, 2019, Mezza gave Plaintiff a disciplinary write-up for alleged "excessive cell phone usage."

64.     Prior to Plaintiff's complaint about Powell, Plaintiff had no disciplinary actions or negative performance reviews.

65.     Powell continued to use the term "nigger" and other racially offensive comments when referring to African American employees.

66.     On May 3, 2019, Plaintiff complained to Mezza again about Powell's racially offensive comments. In response, Mezza gave Plaintiff another disciplinary write-up for an alleged "bad attitude" and transferred Plaintiff back to Defendants' University Avenue location in Little Rock.

67.     As part of the transfer, Defendants demoted Plaintiff from a Key Holder to an Attendant.

68.     On June 6, 2019, Defendants terminated Plaintiff. Team Clean's termination form stated the reason for the termination included Plaintiff's "insubordination", that Plaintiff had "accused me [Mezza] of being racist," and that Plaintiff "attempted to make threats" towards Powell.

69.     Plaintiff's race, African-American, was a motivating factor in Defendants' decision to terminate him.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.     Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII;

b.     Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with

Defendant or at Defendant's request from violating Title VII;

c.      Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, back pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.      Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT THREE
## TITLE VII – RETALIATION

70.     Plaintiff hereby adopts and realleges the allegations of paragraphs 1 through 69 as if fully set forth herein.

71.     Plaintiff Sanford Wade is an African American male.

72.     Plaintiff began working for Defendants on or about February 19, 2018, as an Attendant.

73.     On or about January 1, 2019, Plaintiff transferred to Defendants' new location in Sherwood, Arkansas. Plaintiff was promoted to the position of Key Holder.

74.     Plaintiff's direct supervisor at Defendants' Sherwood location was Gaetonette Mezza ("Mezza"). Mezza is Caucasian.

75.     On or about April 8, 2019, Defendants hired Heath Powell ("Powell") to be the Site Manager for its Sherwood location. Powell is Caucasian. Powell became Plaintiff's new direct supervisor.

76.     On or about April 8, 2019, Team Clean promoted Mezza to the position of Director of Operations.

77.     On or about May 1, 2019, Plaintiff complained to Mezza about Powell's use of the term "nigger" and other racially offensive comments.

78.     Plaintiff reasonably believed that he, and other African-American employees, were being harassed on the basis of their race.

79.     Mezza threatened to fire Plaintiff if he mentioned the comments to Team Clean's owners.

80.     On May 1, 2019, Mezza gave Plaintiff a disciplinary write-up for alleged "excessive cell phone usage."

81.     88.     Plaintiff's disciplinary action would dissuade a reasonable worker in the same or similar circumstance as Plaintiff from making a report of racial harassment.

82.     Prior to Plaintiff's complaint about Powell, Plaintiff had no disciplinary actions or negative performance reviews.

83.     Powell continued to use the term "nigger" and other racially offensive comments when referring to African American employees.

84.     On May 3, 2019, Plaintiff complained to Mezza again about Powell's racially offensive comments. In response, Mezza gave Plaintiff another disciplinary write-up for an alleged "bad attitude" and transferred Plaintiff back to Defendants' University Avenue location in Little Rock.

85.     As part of the transfer, Defendants demoted Plaintiff from a Key Holder to an Attendant.

86.     Plaintiff's disciplinary action and transfer would dissuade a reasonable worker in the same or similar circumstance as Plaintiff from making a report of racial harassment.

87.     On June 6, 2019, Defendants terminated Plaintiff. Team Clean's termination form stated the reason for the termination included Plaintiff's "insubordination", that Plaintiff had "accused me [Mezza] of being racist," and that Plaintiff "attempted to make threats" towards Powell.

88.     Plaintiff's termination would dissuade a reasonable worker in the same or similar circumstance as Plaintiff from making a report of racial harassment.

89.     Defendants would not have terminated Plaintiff but for his complaint of racial harassment.

90.     Defendants' articulated legitimate, non-discriminatory reasons for Plaintiff's termination are not the real reason, but are a pretext to hide retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII;

b.   Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's request from violating Title VII;

c.   Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, back pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

d.   Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT FOUR
## SECTION 1981 – RACE DISCRIMINATION

91.   Plaintiff hereby adopts and realleges the allegations of paragraphs 1 through 90 as if fully set forth herein.

92.   Plaintiff Sanford Wade is an African American male.

93.     Plaintiff began working for Defendants on or about February 19, 2018, as an Attendant.

94.     On or about January 1, 2019, Plaintiff transferred to Defendants' new location in Sherwood, Arkansas. Plaintiff was promoted to the position of Key Holder.

95.     Plaintiff's direct supervisor at Defendants' Sherwood location was Gaetonette Mezza ("Mezza"). Mezza is Caucasian.

96.     On or about April 8, 2019, Defendants hired Heath Powell ("Powell") to be the Site Manager for its Sherwood location. Powell is Caucasian. Powell became Plaintiff's new direct supervisor.

97.     On or about April 8, 2019, Team Clean promoted Mezza to the position of Director of Operations.

98.     Immediately after being hired, Powell began using the term "nigger" when referring to African American employees.

99.     Powell regularly used the term "nigger" when speaking to Mezza in front of African American employees.

100.    Some of the racially offensive comments Powell made include, but are not limited to, stating that he "was going to work them niggers" and that he would promote white employees before he promoted black employees.

101.    Powell's racially offensive comments occurred on a daily basis. Mezza was often present when the comments were made. Mezza did not discipline Powell.

102.    On or about May 1, 2019, Plaintiff complained to Mezza about Powell's use of the term "nigger" and other racially offensive comments.

103.    Mezza threatened to fire Plaintiff if he mentioned the comments to Team Clean's owners.

104.    On May 1, 2019, Mezza gave Plaintiff a disciplinary write-up for alleged "excessive cell phone usage."

105.    Prior to Plaintiff's complaint about Powell, Plaintiff had no disciplinary actions or negative performance reviews.

106.    Powell continued to use the term "nigger" and other racially offensive comments when referring to African American employees.

107.    On May 3, 2019, Plaintiff complained to Mezza again about Powell's racially offensive comments. In response, Mezza gave Plaintiff another disciplinary write-up for an alleged "bad attitude" and transferred Plaintiff back to Defendants' University Avenue location in Little Rock.

108.    As part of the transfer, Defendants demoted Plaintiff from a Key Holder to an Attendant.

109.    On June 6, 2019, Defendants terminated Plaintiff. Team Clean's termination form stated the reason for the termination included Plaintiff's

"insubordination", that Plaintiff had "accused me [Mezza] of being racist," and that Plaintiff "attempted to make threats" towards Powell.

110. Plaintiff's race, African-American, was a motivating factor in Defendants' decision to terminate him.

111. Defendants' articulated legitimate, non-discriminatory reasons for Plaintiff's termination are not the real reason, but are a pretext to hide race discrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by § 1981;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's requests from violating § 1981;

c.    Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, back pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs; and

    d.    Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**COUNT FIVE**
**ARKANSAS CIVIL RIGHTS ACT OF 1993**
**RACE DISCRIMINATION**

112.  Plaintiff hereby adopts and realleges the allegations of paragraphs 1 through 111 as if fully set forth herein.

113.  Defendant discriminated against Plaintiff on the basis of race in the terms and conditions of her employment in violation of 42 U.S.C. § 1981, by not allowing her the same flexibility in schedule and application of policies as Caucasian employees.

114.  Plaintiff avers based on the facts set forth herein, that Defendant terminated her for allegedly getting behind on her work but did not discipline or otherwise treat Caucasian employees the same.

115.  Defendant terminated Plaintiff because of her race and otherwise subjected her to racial discrimination.

116.  Plaintiff may prevail under a mixed-motive theory, as even if Defendant had legitimate reasons for terminating her employment, Plaintiff's race was at least a motivating factor in her termination.

117.  As a consequence of Defendant's unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages and benefits, embarrassment,

humiliation, shame, damage to reputation, mental distress, and emotional pain and anguish.

118.   Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorney's fees, expenses, costs, injunctive relief, and declaratory judgment is her only means of securing adequate relief.

119.   Plaintiff is now suffering, and will continue to suffer, irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.   Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Ark. Code Ann. § 16-123-107;

b.   Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's requests from violating Ark. Code Ann. § 16-123-107;

c.     Grant Plaintiff an Order requiring Defendant to make him whole

by granting appropriate declaratory relief, back pay, compensatory

damages (including damages for mental anguish), punitive damages,

interest, attorney's fees, expenses, costs under Ark. Code Ann. § 16-123-

107; and

d.     Grant Plaintiff such other, further, different, or additional relief

and benefits as justice may require.

### COUNT SIX
### ARKANSAS CIVIL RIGHTS ACT OF 1993
### RETALIATION

120.   Plaintiff hereby adopts and realleges the allegations of paragraphs 1

through 119 as if fully set forth herein.

121.   Plaintiff Sanford Wade is an African American male.

122.   Plaintiff began working for Defendants on or about February 19, 2018,

as an Attendant.

123.   On or about January 1, 2019, Plaintiff transferred to Defendants' new

location in Sherwood, Arkansas. Plaintiff was promoted to the position of Key

Holder.

124.   Plaintiff's direct supervisor at Defendants' Sherwood location was

Gaetonette Mezza ("Mezza"). Mezza is Caucasian.

125.   On or about April 8, 2019, Defendants hired Heath Powell ("Powell") to be the Site Manager for its Sherwood location. Powell is Caucasian. Powell became Plaintiff's new direct supervisor.

126.   On or about April 8, 2019, Team Clean promoted Mezza to the position of Director of Operations.

127.   On or about May 1, 2019, Plaintiff complained to Mezza about Powell's use of the term "nigger" and other racially offensive comments.

128.   Plaintiff reasonably believed that he, and other African-American employees, were being harassed on the basis of their race.

129.   Mezza threatened to fire Plaintiff if he mentioned the comments to Team Clean's owners.

130.   On May 1, 2019, Mezza gave Plaintiff a disciplinary write-up for alleged "excessive cell phone usage."

131.  88.   Plaintiff's disciplinary action would dissuade a reasonable worker in the same or similar circumstance as Plaintiff from making a report of racial harassment.

132.   Prior to Plaintiff's complaint about Powell, Plaintiff had no disciplinary actions or negative performance reviews.

133.   Powell continued to use the term "nigger" and other racially offensive comments when referring to African American employees.

134.   On May 3, 2019, Plaintiff complained to Mezza again about Powell's racially offensive comments. In response, Mezza gave Plaintiff another disciplinary write-up for an alleged "bad attitude" and transferred Plaintiff back to Defendants' University Avenue location in Little Rock.

135.   As part of the transfer, Defendants demoted Plaintiff from a Key Holder to an Attendant.

136.   Plaintiff's disciplinary action and transfer would dissuade a reasonable worker in the same or similar circumstance as Plaintiff from making a report of racial harassment.

137.   On June 6, 2019, Defendants terminated Plaintiff. Team Clean's termination form stated the reason for the termination included Plaintiff's "insubordination", that Plaintiff had "accused me [Mezza] of being racist," and that Plaintiff "attempted to make threats" towards Powell.

138.   Plaintiff's termination would dissuade a reasonable worker in the same or similar circumstance as Plaintiff from making a report of racial harassment.

139.   Defendants would not have terminated Plaintiff but for his complaint of racial harassment.

140.   Defendants' articulated legitimate, non-discriminatory reasons for Plaintiff's termination are not the real reason, but are a pretext to hide retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court assume jurisdiction of this cause of action and award the following relief:

a.    Enter a declaratory judgment that Defendant's policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Ark. Code Ann. § 16-123-108;

b.    Grant Plaintiff a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys, and those acting in concert with Defendant or at Defendant's requests from violating Ark. Code Ann. § 16-123-108;

c.    Grant Plaintiff an Order requiring Defendant to make him whole by granting appropriate declaratory relief, back pay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorney's fees, expenses, costs under Ark. Code Ann. § 16-123-108; and

d.    Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.**

Respectfully submitted,

Ashley R. Rhea
Bar Number: 8736-H81O
Rhea Law LLC
400 West Capitol Avenue
Suite 1700
Little Rock, Arkansas 72201
Telephone: (501) 291-3105
Email: arhea@rhealawllc.com
*Attorney for Plaintiff Sanford Wade*

**DEFENDANTS' ADDRESSES:**
Jonesboro Carwash, LLC
c/o Brad Vaden
17248 Clear Water Drive
Hensley, Arkansas 72065

Boing US Holdco, Inc.
c/o CT Corporation
124 West Capitol Avenue
Suite 1900
Little Rock, Arkansas 72201

# EXHIBIT A

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  **Sanford L. Wade**<br>**25 Parkridge Dr**<br>**Sherwood, AR 72120** | From:  **Little Rock Area Office**<br>**820 Louisiana**<br>**Suite 200**<br>**Little Rock, AR 72201** |

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **493-2019-01322** | **Margie Myers,**<br>**Investigator** | **(501) 324-6214** |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☒ | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

08/04/2020

**William A. Cash, Jr.,**
**Area Office Director**

Enclosures(s)

(Date Mailed)

cc:     **Drew Vaden**                                    **Ashley Rhea**
        **CFO/COO**                                       **Rhea Law Firm**
        **TEAM CLEAN**                                    **104 23rd Street South, Suite 100**
        **PO Box 854**                                    **Birmingham, AL 35233**
        **Bryant, AR 72089**

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),
the Genetic Information Nondiscrimination Act (GINA), or the Age
Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***

Sanford Wade v. TEAM CLEAN CAR WASH                                                    15
Charge No. 493-2019-01322

Enclosures(s)

cc:

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Memphis District Office**

1407 Union Avenue, Suite 901
Memphis, TN  38104
Toll Free: (877) 869-1802
TTY (901) 544-0112
FAX (901) 544-0111
Website: www.eeoc.gov

August 11, 2020

VIA: arhea@rhealawllc.com
Ms. Ashley R Rhea
Attorney
Rhea Law LLC
104 23rd Street South
Suite 100
BIRMINGHAM, AL  35233

Re: FOIA No.: 490-2020-015104
Sanford L. Wade v TEAM CLEAN CAR WASH
Charge No. 493-2019-01322

Dear Ms. Rhea:

Your Freedom of Information Act (FOIA) request, received on August 10, 2020, is processed.
Our search began on August 10, 2020.  All agency records in creation as of August 10, 2020 are
within the scope of EEOC's search for responsive records.  The paragraph(s) checked below
apply.

[X]        Your request is granted in part and denied in part.  Portions not released are
           withheld pursuant to the subsections of the FOIA indicated at the end of this
           letter.  An attachment to this letter explains the use of these exemptions in more
           detail.

[X]        I trust that the furnished information fully satisfies your request.  If you need any
           further assistance or would like to discuss any aspect of your request please do
           not hesitate to contact the FOIA Professional who processed your request or our
           FOIA Public Liaison (see contact information in above letterhead or under
           signature line).

[X]        You may contact the EEOC FOIA Public Liaison Stephanie D. Garner for further
           assistance or to discuss any aspect of your request.  In addition, you may contact
           the Office of Government Information Services (OGIS) to inquire about the FOIA
           mediation services they offer.

           The contact information for OGIS is as follows: Office of Government Information
           Services, National Archives and Records Administration, 8601 Adelphi Road-
           OGIS, College Park, Maryland 20740-6001, email at ogis@nara.gov; telephone
           at (202) 741-5770; toll free 1-877-684-6448; or facsimile at (202) 741-5769.

           The contact information for the FOIA Public Liaison is as follows: Stephanie D.
           Garner, EEOC FOIA Public Liaison, Office of Legal Counsel, FOIA Division,
           Equal Employment Opportunity Commission, 131 M. Street, N.E., Fifth Floor,
           Washington, D.C. 20507, email to FOIA@eeoc.gov, telephone at (202) 663-
           4634; or fax at (202) 653-6034.

[X]        If you are not satisfied with the response to this request, you may administratively
           appeal in writing.  Your appeal must be postmarked or electronically transmitted
           in 90 days from receipt of this letter to the Office of Legal Counsel, FOIA Division,
           Equal Employment Opportunity Commission, 131 M Street, NE, 5NW02E,

FOIA No.: 490-2020-015104
Sanford L. Wade v TEAM CLEAN CAR WASH
Charge No. 493-2019-01322                                                          Page **2** of **5**

Washington, D.C. 20507, email to FOIA@eeoc.gov; online at
https://publicportalfoiapal.eeoc.gov/palMain.aspx, or fax at (202) 653-6034. Your
appeal will be governed by 29 C.F.R. § 1610.11.

[X]          See the attached Comments page for further information.

Sincerely,

Delner Franklin-Thomas
District Director
MEMPFOIA@eeoc.gov

## COMMENTS

Applicable Sections of the Freedom of Information Act, 5 U.S.C. § 552(b):

### Exemption(s) Used:

(b)(5), Exemption (b)(5) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(5) (2016), as amended by the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, permits withholding documents that reflect the analyses and recommendations of EEOC personnel generated for the purpose of advising the agency of possible action. This exemption protects the agency's deliberative process, and allows nondisclosure of "inter-agency or intra-agency memorandums or letters which would not be available to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption covers internal communications that are deliberative in nature. National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132 (1975); Hinckley v. United States, 140 F.3d 277 (D.C. Cir. 1998); Mace v. EEOC, 37 F.Supp. 2d 1144 (E.D. Mo. 1999). The purpose of the deliberative process privilege is to "allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." Missouri ex. rel. Shorr v. United States Corps of Eng'rs., 147 F.3d 708, 710 (8th Cir. 1998).

Records may be withheld under this exemption if they were prepared prior to an agency's decision, Wolfe v. Department of Health and Human Services, 839 F.2d 768, 775, 776 (D.C. Cir. 1988) (en banc) and for the purpose of assisting the agency decision maker. First Eastern Corp. v. Mainwaring, 21 F.3d 465,468 (D.C. Cir. 1994). See also, Greyson v. McKenna & Cuneo and EEOC, 879 F. Supp. 1065, 1068, 1069 (D. Colo. 1995). Records may also be withheld to the extent they reflect "selective facts" compiled by the agency to assist in the decision making process A. Michael's Piano, Inc. v. Federal Trade Commission, 18 F.3d 138 (2d Cir. 1994). An agency may also withhold records to the extent that they contain factual information already obtained by a requester through prior disclosure. See Mapother, Nevas, et al. v. Dep't of Justice, 3 F.3d 1533 (D.C. Cir. 1993).

### DOCUMENTS WITHHELD PURSUANT TO EXEMPTION (b)(5) TO THE FOIA:

1. Portion(s) of Activity Log(s), Bate Number(s): 1-9.

2. Portion(s) of Intake Note(s), Bate Number(s): 10-12.

(b)(6), Exemption (b)(6) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(6) (2016), as amended by the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, permits withholding of information about individuals in "personnel and medical files and similar files" if its disclosure "would constitute a clearly unwarranted invasion of personal privacy." In addition to personnel records and medical files, the term "similar files" encompasses all information that "applies to a particular individual." Dep't of State v. Washington Post Co., 456 U.S. 595, 599-603 (1982). This exemption requires that the privacy interests of the individual be balanced against the public interest in disclosure. Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976). In examining whether there is a "public interest" in disclosure of certain information, the "public interest" must truly be in the interest of the overall public. In United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989), the Supreme Court explained that only "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA, and noted that "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal little or nothing about an agency's own conduct."

Personal details pertaining to an individual are generally protected under this exemption. See, e.g., DOD v. FLRA, 510 U.S. 487, 500-502 (1994) (finding privacy interest in federal employees' home addresses even though they often are publicly available through sources such as telephone directories and voter registration lists); Pons v. United States Customs Service, No. 93-2094,1998 U.S. Dist. LEXIS 6084 at **13-14 (D.D.C. April 27, 1998) (protecting identities of lower and mid-level agency employees who worked on asset forfeiture documents); Barvick v. Cisneros, 941 F. Supp. 1015 (D. Kan. 1996) (finding personal information such as home addresses and telephone numbers, social security numbers, dates of birth, insurance and retirement information, reasons for leaving prior employment, and performance appraisals protectable under Exemption Six). See also, Rothman v. USDA, 1996 Lexis 22716 (C.D. Cal. June 17, 1996) (disclosure of information in the applications of persons who failed to get a job may embarrass or harm them).

**DOCUMENTS WITHHELD PURSUANT TO EXEMPTION (b)(6) TO THE FOIA:**

1. Portion(s) of Schedule(s), Bate Number(s):  32.

2. Portion(s) of Intake Note(s), Bate Number(s):  36-38.

3. Portion(s) of Response(s), Bate Number(s):  59 and 60.

4. Portion(s) of Notice of Charge of Discrimination, Bate Number(s):  40.

(b)(7)(C), Exemption (b)(7)(C) to the Freedom of Information Act (FOIA), 5 U.S.C. § 552(b)(7)(C) (2016), as amended by the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538, authorizes the Commission to withhold:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

The seventh exemption applies to civil and criminal investigations conducted by regulatory agencies. Abraham & Rose, P.L.C. v. United States, 138 F.3d 1075, 1083 (6th Cir. 1998). Release of statements and identities of witnesses and subjects of an investigation creates the potential for witness intimidation that could deter their cooperation. National Labor Relations Board v. Robbins Tire and Rubber Co., 437 U.S. 214, 239 (1978); Manna v. United States Dep't. of Justice, 51 F.3d 1158,1164 (3d Cir. 1995). Disclosure of identities of employee-witnesses could cause "problems at their jobs and with their livelihoods." L&C Marine Transport, Ltd. v. United States, 740 F.2d 919, 923 (11th Cir. 1984).

The Supreme Court has explained that only "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA and noted that "disclosure of information about private citizens that is accumulated in various governmental files" would "reveal little or nothing about an agency's own conduct." United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

For the purposes of determining what constitutes an unwarranted invasion of personal privacy under exemption (b)(7)(C), the term "personal privacy" only encompasses individuals, and does not extend to the privacy interests of corporations. FCC v. AT&T Inc., 131 S.Ct. 1177, 1178 (2011).

FOIA No.: 490-2020-015104
Sanford L. Wade v TEAM CLEAN CAR WASH
Charge No. 493-2019-01322                                                    Page **5** of **5**

**<u>DOCUMENTS WITHHELD PURSUANT TO EXEMPTION (b)(7)(C):</u>**

See Exemption 6.

For a full description of the exemption codes used please find them at the following URL:
https://publicportalfoiapal.eeoc.gov/palMain.aspx

This response was prepared by Mark Adams, Records Disclosure Coordinator, who may
be reached at 901-544-0020.